UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ARTHUR KUDLEK, HAIM AVLA,
CORAM AUTOMOTIVE CENTER, LTD.,
and GHANDI HALABI,

**MEMORANDUM & ORDER**

**08-CV-984 (NGG) (WDW)**

Plaintiffs,

-against-

SUNOCO, INC. (R&M) and RUSSELL
CONSTRUCTION CORP.,

Defendants.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

By Memorandum & Order dated October 3, 2008, this court granted Plaintiffs' Motion to Remand this action to state court. Kudlek v. Sunoco, Inc. (R&M) ("Kudlek I"), 581 F. Supp. 2d 413 (E.D.N.Y. 2008). Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Defendant Sunoco, Inc. (R&M) ("Sunoco") timely filed a Motion for Reconsideration, currently before the court. (Docket Entry #23.) For the reasons below, Sunoco's Motion for Reconsideration is granted, but on reconsideration, the court reaches the same result: the Complaint does not give rise to federal question jurisdiction, and thus the action is not removable to federal court. The court does not disturb its prior holding granting Plaintiffs' Motion for Remand; this Memorandum & Order supplements the reasoning in Kudlek I.

**I. STANDARD**

The decision to grant or deny a motion under Rule 59(e) or Local Rule 6.3 is within the discretion of the district court. See Lisowski v. Reinauer Transp. Co., Inc. No. 03-CV-5396 (NGG), 2009 WL 763602, at *1 (E.D.N.Y. Mar. 23, 2009) (citing cases). Motions under Rule

1

59(e) and Local Rule 6.3 are assessed under the same standard. Am. ORT, Inc. v. ORT Israel, No. 7-CV-2332 (RJS), 2009 WL 233950, at *3 (S.D.N.Y. Jan. 22, 2009). Granting a motion under Rule 59(e) or Local Rule 6.3 is appropriate where "the moving party can point to controlling decisions or data the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. (citing In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003) (quotation marks omitted)). A motion for reconsideration may also be granted to "correct a clear error or prevent manifest injustice." Coleman v. brokersXpress, LLC, No. 08-CV-5085 (SAS), 2009 WL 539862, at *1 (S.D.N.Y. Mar. 4, 2009) (citation omitted). Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Id. (citations omitted); see also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (noting that a motion for reconsideration should be denied when the movant "seeks solely to relitigate an issue already decided").

## II. DISCUSSION

### A. Motion for Reconsideration

The court assumes familiarity with its prior Memorandum & Order, which granted Plaintiffs' Motion to Remand. Kudlek I, 581 F. Supp. 2d at 419. Sunoco had argued that, while no federal claim appears on the face of the Complaint, this action is removable pursuant to the "artful pleading" exception to the well-pleaded complaint doctrine, because Plaintiffs' claims are subject to and preempted by the Petroleum Practices Marketing Act, 15 U.S.C. § 2801 et seq. ("PMPA"). Id. at 416. The court rejected Sunoco's claims, concluding that the PMPA does not have the "complete preemptive effect" that would authorize removal of a complaint pleading only state-law causes of action. Id. at 416-18 (noting that "the artful pleading doctrine allows

2

removal where federal law completely preempts a plaintiff's state law claim," quoting Rivet v. Regions Bank, 522 U.S. 470, 475 (1998) (emphasis added)).

In support of its Motion for Reconsideration, Sunoco argues that complete preemption and the artful pleading doctrine are "separate and distinct corollaries" of the well-pleaded complaint rule, and that the absence of complete preemption does not prevent the court from finding federal jurisdiction based on the artful pleading doctrine. (Def. Mem. 1 (Docket Entry #23).) Relying on Marcus v. AT&T Corporation, 138 F.3d 46 (2d Cir. 1998), Sunoco contends that a court need not consider complete preemption when artful pleading provides an alternative ground for federal jurisdiction. (Id. at 3.) Plaintiffs rely on Rivet, 522 U.S. at 475, to assert that complete preemption is necessary before the well-pleaded complaint rule may be applied to state-law claims. (Pl. Opp. 2 (Docket Entry #26).)

While Sunoco does not explicitly assert that this court erred, its invocation of Marcus suggests that it believes the court overlooked a decision that "might be reasonably expected to alter the conclusion reached by the court." In re BDC 56 LLC, 330 F.3d at 123. In Marcus, the Second Circuit concluded that while the Federal Communications Act ("FCA") did not completely preempt the plaintiffs' state-law breach of warranty claim, the artful pleading doctrine provided an alternative basis for removal, because the contracts at issue were tariffs filed with the Federal Communications Commission in accordance with the FCA. See Marcus, 138 F.3d at 55, 56. The court noted that "[t]he legal relationship between AT&T and its customers is defined by the tariffs, which consist of the terms and conditions of the common carrier's service and rates, that AT&T is required to file and maintain" with the FCC under the FCA. Id. at 56 (quotation omitted). It noted that the plaintiffs' breach of warranty claim "seeks to enforce the terms" of the tariffs, and such "federal tariffs are the law, not mere contracts,"

3

which "conclusively and exclusively enumerate the rights and liabilities of the contracting parties." See id. at 55, 56 (citations and quotation marks omitted). Accordingly, the court found that the breach of warranty claim raised a federal question, and that removal was proper. Id.

The Second Circuit spoke more recently on the subject of artful pleading and complete preemption in Sullivan v. American Airlines, Inc., 424 F.3d 267 (2d Cir. 2005). In Sullivan, the Second Circuit noted that "[t]he artful-pleading doctrine includes within it the doctrine of complete preemption." Id. at 272. The court acknowledged in a footnote that "[t]he precise scope of the artful-pleading doctrine is not entirely clear." Id. at 272 n.4. The court explained:

> In this circuit, the artful-pleading doctrine has been relied upon to support federal-court jurisdiction where complete preemption did not apply, but where a plaintiff's state-law contract claims were construed as asserting rights arising only under federal tariffs. See Marcus, 138 F.3d at 55-56. The Eighth Circuit, by contrast, has said that the artful-pleading and complete-preemption doctrines are coextensive and that a federal court may therefore construe a plaintiff's state-law suit as raising a federal claim only where that claim arises under a completely preemptive statute. See M. Nahas & Co. v. First Nat'l Bank of Hot Springs, 930 F.2d 608, 612 (8th Cir. 1991). Because we address in this opinion only complete preemption, which the Supreme Court in Rivet described as falling within the artful-pleading doctrine, 522 U.S. at 475, 118 S. Ct. 921, we need not try to trace the artful-pleading doctrine's outer boundaries.

Id.[1] The court concluded that the action was not removable because the federal statute at issue – the Railway Labor Act – did not give rise to complete preemption; the court did not consider "artful pleading" separately. See id. at 276-77.

The court reads Marcus and Sullivan as standing for the proposition that, in certain situations, a court may find federal question jurisdiction under the artful pleading

---

[1] The Fifth Circuit has also explicitly held that "the artful pleading doctrine applies only where state law is subject to complete preemption." Bernhard v. Whitney Nat'l Bank, 523 F.3d 546, 551 (5th Cir. 2008) (emphasis added); see also Terrabone Homecare, Inc. v. SMA Health Plan, Inc., 271 F. 3d 186 (5th Cir. 2001) ("Without complete preemption, the artful pleading doctrine does not apply. If this was once a matter of debate, the Supreme Court recently has put the issue to rest [in Rivet]. . . . Indeed, even prior to Rivet, this was the rule in this circuit and others.").

4

doctrine even where a federal statute does not have complete preemptive effect. Marcus presented a unique factual situation, however, in which the contracts at issue were not contracts, but federal tariffs that had the "force of federal law." 138 F.3d at 55, 56. Here, unlike in Marcus, Plaintiffs seek rescission of actual contracts, although the parties dispute whether Defendants' actions with respect to those contracts are subject to, or preempted by, the PMPA.

Without a more definite statement from the Second Circuit as to the "outer boundaries" of the artful pleading doctrine, however, and out of an abundance of caution, I will grant Sunoco's Motion for Reconsideration to the extent that I will consider the artful pleading doctrine separately from complete preemption. In addition, in light of Marcus and Sullivan, my statement in Kudlek I interpreting Supreme Court case law to require that "the artful pleading doctrine applies only where there is complete preemption," Kudlek I, 581 F. Supp. 2d at 419, sweeps too broadly. Granting Sunoco's Motion for Reconsideration, however, does not change my prior analysis and holding in Kudlek I that the PMPA does not have complete preemptive effect, and that the action is not removable on the basis of complete preemption. Here, I consider only whether the action is independently removable on the basis of the artful pleading doctrine.

### B. Artful Pleading Doctrine

As noted in Kudlek I, a defendant may remove an action to federal district court if the latter court has original jurisdiction, 28 U.S.C. § 1441(a), which includes any action arising under federal law, 28 U.S.C. § 1331. The burden is on the removing party to "to establish its right to a federal forum by 'competent proof.'" R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments,

5

federal courts construe the removal statute narrowly, resolving any doubts against removability." Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941); accord Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 31 (2002) (noting that "statutory procedures for removal are to be strictly construed"). "If the removing party cannot demonstrate federal jurisdiction by 'competent proof,' the removal was in error and the district court must remand the case to the court in which it was filed." Hill v. Delta Int'l Mach. Corp., 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005). Courts determine whether subject matter jurisdiction exists by "looking to the complaint as it existed at the time the petition for removal was filed." Id. (footnote omitted).

Ordinarily, determining whether a particular case arises under federal law turns on the "well-pleaded complaint rule," which provides that federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. As such, "[t]he well-pleaded-complaint rule mandates that in assessing subject-matter jurisdiction, a federal court must disregard allegations that a well-pleaded complaint would not include – e.g., allegations about anticipated defenses." Sullivan, 424 F.3d at 271 (citing Rivet, 522 U.S. at 475 ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim.")).

The artful pleading doctrine, a corollary to the well-pleaded complaint rule, "rests on the principle that a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." Id.; Rivet, 522 U.S. at 475-76; see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 464 U.S. 1, 22 (1983) ("[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal

questions in a complaint."). With "such an artfully (i.e., misleadingly) pleaded complaint, the federal court may construe the complaint as if it raised the federal claim that actually underlies the plaintiff's suit." Sullivan, 424 F.3d at 271-72.

The court summarizes the salient facts but does not repeat the detailed background set forth in Kudlek I. Plaintiffs are owners and operators of Sunoco-branded fuel and service stations; prior to purchasing the stations, each Plaintiff had been leasing the stations and premises from Sunoco and operating the stations pursuant to three-year dealer franchise agreements ("DFAs") with Sunoco. In 2004, each Plaintiff entered into a contract with Sunoco to purchase the stations. As a condition of purchase, Plaintiffs and Sunoco canceled their previous franchise agreements and entered into new Dealer Supply Franchise Agreements ("DSFAs"), which committed Plaintiffs to purchasing Sunoco-branded fuel for ten years. The Complaint seeks rescission of the ten-year DSFAs, on the basis that Plaintiffs were coerced into entering into the DSFAs as a condition of purchasing the properties.[2] See Kudlek I, 581 F. Supp. at 414-16.

Sunoco contends that Plaintiffs' claim for rescission of the DSFAs is subject to the PMPA, which regulates the termination and/or non-renewal of petroleum franchises and preempts state laws which attempt to regulate these subjects.[3] Id. at 415. Sunoco further

---

[2] Each contract for sale of the property also contained a clause that required Plaintiffs and Sunoco to enter into Tank Removal and Replacement Agreements ("TRRAs") at the closing; the Complaint also asserts breach of contract claims with respect to the TRRAs. Kudlek I, 581 F. Supp. 2d at 415.

[3] The PMPA's preemption provision provides that:
> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

7

contends that the Complaint challenges, in part, the propriety of the termination and/or non-renewal of the previous DFAs and the "altering" of the franchise relationships between Sunoco and Plaintiffs due to Sunoco's offer to sell the properties. Id. Plaintiffs contend that the PMPA does not govern their cause of action for rescission, because that claim arises out of the "conditions and circumstances surrounding the creation of the DSFA" and is not a challenge to a termination and/or non-renewal of a franchise relationship. Id. at 416.

To find federal question jurisdiction on the basis of the artful pleading doctrine notwithstanding the PMPA's lack of complete preemptive effect, the court would have to conclude that the Complaint is "artfully (i.e., misleadingly) pleaded" and omitted "to plead necessary federal questions." Sullivan, 424 F.3d at 271 (quotation omitted). The PMPA explicitly prohibits the "termination of a franchise" or "non-renewal of a franchise relationship" except on various enumerated grounds and in accordance with the statute's notice requirements. See 15 U.S.C. §§ 2801, 2802. Here, while Plaintiffs and Sunoco terminated the prior franchise agreements – the DFAs – they did not terminate the "franchise relationship," because the parties entered into new franchise agreements – the DSFAs. While the parties agree that they remain in a "franchise relationship" as defined by the PMPA, as the court previously noted, "[t]he dispute between the parties on the applicability of the PMPA centers on whether the termination of the prior three-year DFAs and signing of the ten-year DSFAs constitutes a 'termination and non-renewal' of the franchise relationship." Kudlek I., 581 F. Supp. at 419. Thus, the parties dispute

---

15 U.S.C. § 2806(a)(1).
As the court noted in Kudlek I, the Second Circuit has considered the scope of this provision and has concluded that "[t]he PMPA neither expressly nor impliedly preempts all state law relating to any aspect of the termination or non-renewal of petroleum franchises. Rather, it preempts only state statutes as to grounds for, procedures for, and notification requirements with respect to termination or non-renewal." Kudlek I, 581 F. Supp. at 416-17 (quoting Bellmore v. Mobil Oil Corp., 783 F.2d 300, 305 (2d Cir. 1986) (emphasis added)).

whether Plaintiffs' equitable rescission claim is "really" a PMPA claim for termination and non-renewal of the franchise relationship, notwithstanding the parties' renewal of that relationship.

In certain situations where franchisees renewed their franchise agreements or otherwise continued the franchise relationship, various courts have considered whether a claim for "constructive termination" or "constructive non-renewal" is cognizable under the PMPA. See, e.g., Marcoux v. Shell Oil Prods. Co., 524 F.3d 33 (1st Cir. 2008); Dersch Energies, Inc. v. Shell Oil Co., 314 F.3d 846, 862 (7th Cir. 2002); Pro Sales, Inc. v. Texaco, 792 F.2d 1394 (9th Cir. 1986); Barnes v. Gulf Oil Corp., 795 F.2d 358 (4th Cir. 1986). While some circuits have recognized such claims, the Second Circuit has not explicitly done so. See Atlantic Autocare, Inc. v. Shell Oil Prod. Co. LLC, --- F. Supp. 2d ---, No. 06-CV-4242 (SHS), 2009 WL 614544, at *2 and & n.1 (S.D.N.Y. Mar. 11, 2009) (Stein, J.) (noting that the Second Circuit has not explicitly decided whether a constructive termination claim is actionable and concluding that the plaintiff's claims would fail even if the court adopted the approach of courts that have recognized the claim). In any event, my colleague Judge Stein in the Southern District noted that courts recognizing constructive termination claims under the PMPA have "limited [it] to one specific context: when a franchisor has assigned the franchise agreement to a third party." Id. at *3 (citing cases and noting that "[P]laintiff has cited no case that has upheld a constructive termination claim outside the context of an assignment"). Such circumstances are not present here.

In addition, at least one circuit, finding that the PMPA does not give rise to claims for constructive non-renewal or termination, has allowed state-law economic duress claims regarding the franchise agreements to proceed. See Kudlek I, 581 F. Supp. at 419 n.9 (citing Dersch, 314 F.3d at 862 (noting that where the plaintiff actually renewed the petroleum franchise

9

agreement, she is "entitled to bring a state law claim . . . such as economic duress").) In Dersch, the Seventh Circuit noted that "Congress enacted the PMPA to federalize the standards by which petroleum franchises are terminated . . . not to create a federal common law for governing petroleum franchise agreements." Dersch, 314 F.3d at 861-62; see also Atlantic Autocare, 2009 WL 614544, at *3 (discussing Dersch and noting that "ongoing disputes between a franchisee and its franchisor . . . are governed by the terms of the franchise agreement, not by the PMPA. It is only when there is a 'termination or nonrenewal' – or, under some cases, an assignment – of the franchise that the PMPA comes into play.").

In sum, the court cannot find that Plaintiffs have "artfully pled" federal claims in disguise. The PMPA, by its terms, requires termination or non-renewal of the franchise relationship, and Plaintiffs and Sunoco entered into new franchise agreements. Even if Plaintiffs' equitable rescission claim could be construed as a constructive termination claim under the PMPA, the Second Circuit has not explicitly recognized such a claim, and other courts that have recognized constructive termination claims have done so in different factual contexts. In any event, those cases concern plaintiffs who sought federal jurisdiction and filed their claims in federal court. Given that "federal courts construe the removal statute narrowly, resolving any doubts against removability," Shamrock Oil, 313 U.S. at 108, the court will not read a federal question into Plaintiffs' Complaint where none exists on its face and where the purported federal claim has not been explicitly recognized in this circuit.

Sunoco further asserts that the equitable rescission claims will "require the Court to engage in an analysis under the PMPA to determine if Sunoco acted properly when it allegedly 'altered' the franchise relationship with Plaintiffs." (Def. Mem. 3). The Second Circuit has stated, however, that "as a general rule, a suit seeking recovery under state law is not

transformed into a suit 'arising under' federal law merely because, to resolve it, the court may need to interpret federal law." Sullivan, 424 F.3d at 271 (citing Gully v. First Nat'l Bank, 299 U.S. 109 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit.")). Moreover, as explained in detail in Kudlek I, in the absence of complete preemption, a preemption defense to the state-court claims does not confer federal question jurisdiction. See Kudlek I, 581 F. Supp. at 416-18 (noting that "a defense that plaintiff's claims are preempted by federal law will not suffice to confer federal question jurisdiction" and citing cases remanding claims where PMPA preemption could be asserted as a defense).

Finally, the court addresses Bellefort Enterprises, Inc. v. Petrotex Fuels, Inc., No. H-06-0257, 2006 WL 1581934 (S.D. Tex. June 6, 2006), one instance in which a district court vacated a previous order remanding a case seeking rescission of a service station franchise contract. The district court in Bellefort mentioned the artful pleading doctrine and noted that the plaintiffs' claims were preempted by the PMPA. Id. at *1. In Kudlek I, this court noted that it was not persuaded to follow a similar course, because Bellefort did not address complete preemption. See Kudlek I, 581 F. Supp. 2d at 419. Even considering the artful pleading doctrine separately from the complete preemption doctrine, the court is not persuaded to follow Bellefort, which, while citing the artful pleading doctrine, decided the case on the basis of preemption.

In sum, the court concludes, both for the reasons articulated in Kudlek I regarding complete preemption and for the reasons above regarding the artful pleading doctrine, that the Complaint does not give rise to federal question jurisdiction. The court does not disturb its prior holding granting Plaintiffs' Motion for Remand.

11

## III. CONCLUSION

Sunoco's Motion for Reconsideration is granted. On reconsideration, the court reaches the same result as it did in <u>Kudlek I</u>. This Memorandum & Order supplements the reasoning in <u>Kudlek I</u> but does not disturb its holding granting Plaintiffs' Motion for Remand.

SO ORDERED.

Dated: Brooklyn, New York
April 15, 2009

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge